FILED
2011 Mar-30  PM 12:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| ONESHA RUTLEDGE, | ) | |
| o/b/o S.S.R., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09-cv02570-KOB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION

### I. INTRODUCTION

On October 4, 2006, Onesha Rutledge filed an application for Supplemental Security
Income (SSI) benefits under Title II of the Social Security Act on behalf of her minor child
S.S.R. (R. 64).  Claimant alleges disability commencing on April 14, 1997 due to asthma. (R. 77,
64).  The Commissioner initially denied the claim and on January 5, 2007, a timely request was
filed for a hearing before an Administrative Law Judge.  (R. 66; 44).  The ALJ held a hearing on
November 12, 2008. (R. 23).  In a decision dated February 3, 2009, the ALJ found that the
claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for SSI
benefits. (R .8).  On October 28, 2009 the Appeals Council denied claimant's request for review,
consequently the ALJ's decision became the final decision of the Commissioner of the Social
Security Administration. (R.1).  The claimant has exhausted her administrative remedies, and this
court has jurisdiction pursuant to 42 U.S.C. § § 405(g) and 1283(c)(3).  For the reasons stated

below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ fully developed the record enough to base his decision on substantial evidence.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No... presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).

2

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

## V. FACTS

S.S.R. was eleven years old and in sixth grade at the time of the administrative hearing. (R. 49). She is a student at Inglenook Elementary. (R. 49). School records indicate that she had to use an Albuterol inhaler every four to six hours during school. (R. 101, 108.). Ms. Rutledge alleges that S.S.R.'s asthma causes frequent exacerbation, and requires hospitalization, emergency room visits, and multiple courses of oral steroids. (R.134).

*Medical History*

On June 11, 2003, claimant visited Jefferson County Department of Health (Jefferson)

for a routine exam, and her Albuterol MDI, Aerochamber & mask, and Flovent 110 prescription were renewed.  The doctor's notes indicate that claimant had asthma and her condition was well controlled.  On February 4, 2004, claimant saw Dr. Blankson, a pediatrician, and complained of a bad cough, wheezing, and sore throat.  Dr. Blankson noted the claimant was out of asthma medicine and made a primary diagnoses of wheezing.  On November 9, 2004, claimant visited Dr. Blankson for a routine exam and complained of an asthma flare up and wheezing.  Dr. Blankson noted that the claimant had not wheezed since last year, and that her mother gave her Albuterol erratically without Aerochamber.  Claimant's mother complained of behavioral problems and claimed claimant's teachers were complaining about inattentiveness and disruption.  Claimant was prescribed Prelone (oral steroid used to treat asthma) for five days.  On April 27, 2005 claimant was seen in the emergency room for wheezing, and Dr. Blankson diagnosed her with acute bronchospasms. (R. 203-208).

On September 15, 2005, claimant visited Dr. Meyers, a pediatrician at Jefferson, and complained of wheezing and coughing.  Dr. Meyers wrote a prescription for Flovent, Albuterol, and Aerochamber with medium mask. (R. 200).  On March 11, 2006, the claimant was treated at Children's Health System (CHS) emergency room for asthma exacerbation and discharged on March 12. (R. 168).  On March 13, 2006, the claimant was admitted to CHS and prescribed 3 long nebulizer treatments, but continued to have significant wheezing and respiratory distress. (R. 161).  Claimant was initially treated with oral Prednisone and Albuterol aerosols every 2 hours, weaned to every 3 hours, and then to every four hours.  Claimant was also treated with Atrovent aerosols alternating with her Albuterol aerosols.  Claimant was discharged the same

day, and Dr. Pass, a pediatrician, determined that "the family has not been using Flovent which should be their mainstay for preventing recurrent episodes of asthma." (R. 164).

On August 23, 2006, claimant visited Dr. Blankson for a routine exam and her mother indicated that she was experiencing wheezing, coughing and was out of medicine. Dr. Blankson noted that claimant's poor asthma control was mainly because she was noncompliant and because she was exposed to secondhand cigarette smoke at home.  (R. 197).  On August 24, 2006, claimant was treated at CHS for an asthma exacerbation.  Dr. Blankson noted that the claimant had run out of Flovent and Albuterol prior to her exacerbation. (R. 143).  Claimant started on Albuerol, Flovent, and prednisone; Dr. Blankson determined claimant was better but continued to treat her with the nebulizer. (R. 144).  Claimant was discharged on August 25, 2006. (R. 145).  On October 17, 2006, claimant visited Dr. Blankson and needed Flovent and Albuterol.  Dr. Blankson added Singulair (medicine used to prevent asthma attacks) for better control. (R. 197).

On November 28, 2006, Dr. Carter, an internal medicine specialist and a state agency consultant, reviewed the claimant's medical record and concluded that the claimant does have a severe impairment or combination of impairments, but the impairments do not meet, medically equal, or functionally equal the listings.  Dr. Carter found that the claimant had no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself.  Dr. Carter also determined that the claimant had less than a marked limitation in her health and physical well-being because of her one exacerbation admission in August 2006 and two exacerbation doctor's office visits.

Dr. Carter noted that the admission exacerbation was because the claimant was out of medication for a week prior to her admission and stated that the claimant's allegations were partially credible.  (R. 216-219).

On December 20, 2006, Ms. Rutledge reported to Dr. Blankson that claimant had an asthma attack and paramedics gave her nebulizer but claimant was still wheezing with chest pain. Claimant received inhalation treatment, nebulizer, and prescriptions for Albuterol, Lodrane (treats allergies), and Prednisone. (R. 303).  On May 21, 2007 claimant was treated for asthma exacerbation and discharged on May 22, 2007.  (R. 301).

On August 26, 2007 and August 30, 2007, claimant visited the ER for asthma exacerbation. *Id.*  A week or so later on September 6, 2007, claimant visited Dr. Blankson for a routine, exam and her mother reported 2 asthma attacks. (R. 299).  Claimant received a new Advair Diskus prescription. (R. 301).

On March 31, 2008, claimant was treated in the ER by Dr. Kendrick, for wheezing.  Dr. Kendrick observed that the claimant was in no apparent distress and did not appear to be acutely ill. (R. 235).  On November 11, 2008, claimant was seen in the ER for asthma , admitted to the hospital and released on November 14, 2008.  During her stay claimant received Prednisone, Claritin, Flonase, and Albuterol.  (R. 314).

*ALJ Hearing*

After the Commissioner denied the claimant's request for SSI, the claimant filed a request for reconsideration and received a hearing before an ALJ. (R. 66, 23).  At the hearing, Ms. Rutledge testified that the claimant's primary impairment is asthma. (R. 50).  Ms. Rutledge

testified that the claimant uses her inhaler everyday and that claimant also uses the nebulizer when she is having an asthma attack or needs to catch her breath. (R. 52). Ms. Rutledge testified that if the nebulizer does not stop the asthma attack after three attempts, she takes the claimant to the emergency room. (R. 52). Ms. Rutledge also testified that the claimant only takes her inhaler to school, and if the inhaler does not stop her asthma attack, the school calls either her or the ambulance. (R. 54).

Ms. Rutledge testified that the claimant is in pain and miserable during her asthma attacks. Ms. Rutledge testified that dust, claimant's doll, perfumes, air fresheners, heat, and the weather can all cause the claimant to have an asthma attack. Ms. Rutledge also testified that the claimant cannot play too long and is excused from Physical Education class at school because of her asthma. (R. 54-56).

Ms. Rutledge testified that the claimant takes Advair, Singulair, Flonase, and Claritin when she returns home from school. Ms. Rutledge stated that claimant's medications cause her to eat a lot, shake, and adversely affects her vision. Ms. Rutledge testified that the claimant's after school activities include eating, homework, library visits, watching television, and playing a video game. Ms. Rutledge also testified that the claimant wheezes, coughs, and tosses and turns throughout the night. (R. 56-57).

Ms. Rutledge testified that the last time she took the claimant to the ER prior to the hearing was in November. Ms. Rutledge also stated that the claimant stayed overnight once or twice last year at the ER. Ms. Rutledge testified that the claimant was admitted to the hospital one time because she was unable to get her medication fulfilled because of her approval issues with Medicaid. (R. 59-60).

The claimant testified that she is absent from school once or twice a month because of her asthma, but she is able to catch up at school.  The claimant stated that the nebulizer does not work all the time and when it fails, she is taken to the hospital. The claimant testified she feels pain in her chest during her asthma attacks.  The claimant stated that she is unable to do extra-curricular activities and can no longer play in the backyard because her asthma causes her to tire quickly.  The claimant testified that her activities include talking on the phone, playing with cousins, watching television, and completing chores around the house. (R. 61-62).

*The ALJ's Decision*

On February 3, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 8).  First, the ALJ found that the claimant was a school-age child on October 4, 2006, the date the application was filed, and was currently a school-age child. Next, the ALJ found that the claimant had not engaged in substantial gainful activity at any time relevant to the decision.  The ALJ found that the claimant's asthma and morbid obesity are severe impairments; however, he concluded that the claimant does not have an impairment or combination of impairments that functionally equals the listings. (R. 14).

In making this determination, the ALJ evaluated the limitations to six functional domains. First, the ALJ determined that the claimant has no limitations in acquiring and using information, attending and completing tasks, or interacting and relating with others, and that no limitations were alleged.  Next, the ALJ found that the claimant has less than marked limitations in moving and manipulating objects.  To support his conclusion, the ALJ referenced the medical records reflecting that the claimant's asthma does not severely limit her in this area.  The ALJ also determined that the progress notes and school records revealed that the claimant experienced

8

several asthma exacerbations while exercising, that she did not have an unusual number of school absences, and that she did participate and made good grades in Physical Education. (R. 16-18).

Next, the ALJ found that the claimant has no limitation on her ability to care for herself; however, the ALJ determined that the claimant has marked limitations in health and physical well-being.  The ALJ found that the claimant's number of hospital visits averaged less than 3 visits a year.  The ALJ also noted that the claimant responded well and quickly to treatment on each occasion, and that several of the visits occurred when the claimant was out of her medication or had not been taking her medication properly.  (R. 19).

## VI. Discussion

The claimant argues that the ALJ failed to properly develop the record enough to base his decision on substantial evidence, because she claims her asthma condition meets the childhood asthma listings 103.03(B) and 103.03(C).  To the contrary, this court finds that the ALJ properly developed the record and that substantial evidence supports his decision.

To meet or equal Section 103.03(B), the claimant must have asthma with "attack[s] (as defined in 3.00 C)[1], in spite of prescribed treatment and requiring physician intervention, occurring a least once every two months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for control asthma counts as two attacks, and an

---

[1]Section 3.00 C defines attacks as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting."

evaluation period of at least 12 consecutive months must be used to determine frequency of attacks." 20 C.F.R. pt. 404, subpt. P., app.1, § 103.03(B).

The listing specifically requires that the asthma attack must occur *in spite of prescribed treatment*. However, the hospital records indicate that the claimant's complications with asthma were largely caused by medical noncompliance, documented on several occasions by two separate physicians. For example, on February 4, 2004, Dr. Blankson noted the claimant was out of asthma medicine. On November 9, 2004, Dr. Blankson determined that the claimant's mother gave her Albuterol erratically without Aerochamber. Her hospitalizations also fail to meet the requirements of § 103.03(B). On March 13, 2006, following claimant's March 11 and March 12 emergency room visits, Dr. Pass found that "the family has not been using Flovent which should be their mainstay for preventing recurrent episodes of asthma." Although, this inpatient hospitalization was for longer than 24 hours, the hospitalization fails to satisfy the strict condition of "in spite of prescribed treatment" as required by 103.03(B).

Similarly, on August 23, 2006, Dr. Blankson noted that claimant's poor asthma control was mainly because of noncompliance. On August 24, 2006, claimant was admitted overnight and Dr. Blankson noted that the claimant had run out of Flovent and Albuterol prior to her exacerbation. This inpatient hospitalization was also for longer than 24 hours; however, the hospitalization fails to satisfy the strict condition of "in spite of prescribed treatment" as required by 103.03(B).

The only other episodes that may satisfy the "attack" requirements of 103.03(B) fail also to satisfy the frequency requirement; attacks must occur once every two months or at least six

times a year requirement.  Even if the December 2006, May 2007 (hospitalization for longer than 24 hours and subsequently counts as two visits), and two August 2007 visits satisfy the attack requirements of 103.03(B), the combination of five attacks still falls short of the "six times a year" requirement[2].  The November 2008 hospitalization also does not satisfy the requirement because it was not within a twelve month period of any other qualifying attack.  Thus, claimant's asthma attack medical history does not  satisfy the requirements of 103.03(B) and substantial evidence supports the ALJ's determination that the claimant did not meet or equal a listed impairment.

To meet or equal Section 103.03(C)(2), the claimant must show asthma with "persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: 2 short courses of Corticosteriods that average more than 5 days per month for a least 3 months during a 12-month period."  The claimant provides no evidence of persistent low-grade wheezing between acute attacks.  During the March 2006 to March 2008 time period, the claimant only complained of wheezing on four separate occasions: March 2006, August 2006, December 2006 and March 2008.  During the March and August 2006 visits, claimant's doctors (Dr. Pass and Dr. Blankson) noted that the claimant was noncompliant with her prescribed treatment.  During the March 2008 visit, Dr. Kendrick noted that the claimant did not appear to be in apparent distress.  The claimant provided no other record or testimony regarding her

---

[2]The court need not determine whether each individual visit satisfies the requirement of 103.03(B) because, regardless of whether the attacks satisfy the requirement, the claim still fails.

wheezing.  In making a claim for disability benefits, a claimant bears the initial burden of establishing the existence of a disability, and therefore, is responsible for producing evidence in support of his claim.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Thus, the evidence in the record fails to support that the claimant satisfied the strict requirements of 103.03(C) and instead supports the ALJ's decision.

The ALJ has the duty to fully develop a full and fair administrative record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  This obligation ensures that the ALJ conscientiously probes into, inquires of, and explores all relevant facts, thereby enabling a court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence.  *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988).  The court finds that the ALJ adequately developed the medical record, complete with treatment records and testimony from the claimant and her mother regarding claimant's abilities. In any event, the claimant has not shown that she was prejudiced by any alleged lack of development.  *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (stating that "there must be a showing of prejudice" [before] the case must be remanded to the Secretary for further development of the record."); *see also Brock v. Chater*, 84 F.3d 726, 727-28 (5th Cir. 1996) ("[claimant points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have changed the result.  We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").  Claimant has not, for example, pointed the court to specific evidentiary gaps that resulted in prejudice.

12

This court finds that the ALJ fully developed the record and that substantial evidence supports his decision.  Therefore, this court will affirm the decision of the Commissioner.

## V. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.  The court will enter a separate order.

Dated this 30th day of March, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE